# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Remark Holdings, Inc. and KanKan Limited,

Plaintiffs

v.

China Branding Group Limited, et al.,

Defendants

Case No.: 2:18-cv-00322-JAD-CWH

**Order Granting Roseman's (1) Motion to Reconsider Stay Order and (2) Motion to Dismiss**

[ECF Nos. 20, 60]

Plaintiffs Remark Holdings, Inc. and KanKan Limited (the Buyers) sue Adam Roseman, China Branding Group Limited (CBG), and CBG's Joint Official Liquidators (JOLs)[1] to rescind what they contend was a fraudulently obtained agreement to purchase three of CBG's companies that "worked together to film and stream American content to China" (the Target Entities).[2] Roseman moved to dismiss the Buyers' claims and the other defendants followed suit.[3] CBG and the JOLs also filed a counterclaim against the Buyers.[4] The parties then mediated their disputes with a private mediator; the Buyers "reached an agreement in principle" with CBG and the JOLs, but not with Roseman.[5]

Seeking more time to negotiate the final terms of their settlement, the Buyers, CBG, and the JOLs stipulated to hold both their and Roseman's dismissal motions in abeyance.[6] Because

---

[1] The named JOLs are Hugh Dickson of Grant Thornton Specialist Services (Cayman) Ltd. and David Bennett of Grant Thornton Recovery and Reorganization Ltd. ECF No. 1 at ¶ 4.

[2] ECF No. 1 at ¶ 18. The Target Entities are RAAD Productions, LLC; China SNS Group Limited; and Fanstang (Shanghai) Entertainment Information Consulting Co. Ltd. ECF No. 21-1 at 65.

[3] ECF Nos. 20 (Roseman), 40 (CBG and JOLs).

[4] ECF No. 53.

[5] ECF No. 58 at 2, ¶ 5.

[6] ECF No. 58.

that stipulation was filed by fewer than all parties to this case, I construed it as a joint motion under Local Rule 7-1(c) and, finding good cause, I granted it and held both Roseman's and CBG and the JOLs' dismissal motions in abeyance.[7] Roseman immediately moved for reconsideration, arguing that the Buyers' settlement with CBG and the JOLs should not preclude a decision on his entirely separate dismissal motion.[8] The Buyers oppose Roseman's motion and move to enforce the stipulated settlement that they reached with CBG and the JOLs.[9]

In light of the Buyers' motion to enforce their settlement with CBG and the JOLs, I grant Roseman's motion for reconsideration and lift the temporary stay on his dismissal motion. And, for the reasons explained below, I grant Roseman's dismissal motion without prejudice and with leave to amend except as otherwise stated in this order.

**Discussion**

Roseman offers four reasons why the Buyers' claims against him are infirm: (1) he is not a party to the purchase agreement, so he cannot be sued for its rescission or for a declaration of rights thereunder; (2) the purchase agreement's integration and non-reliance clauses bar the Buyers from relying on any extra-contractual representations; (3) claims for intra-contractual representations are contractually time barred; and (4) the Buyers fail to allege fraud with the required particularity and plausibility. The parties agree that Delaware supplies the substantive law in this diversity case because that state's laws govern the purchase agreement that lies at the heart of the Buyers' claims. They also agree that I can consider the terms of that agreement without converting Roseman's dismissal motion into one for summary judgment.

---

[7] ECF No. 59.
[8] ECF No. 60.
[9] ECF No. 63. I do not address the Buyers' motion to enforce settlement in this order.

**A.    Roseman's status vis-à-vis the purchase agreement is not proper dismissal fodder.**

Roseman first argues that he is not a party to the purchase agreement, so the Buyers' (1) remedy for their common law fraud claim of rescinding that agreement and (2) claim for a declaration of rights under it both fail. Roseman theorizes that he isn't a party to the transaction because he didn't sign the purchase agreement in his individual capacity or his capacity as "Seller Management," as defined in the agreement,[10] and he never incurred any personal obligations in connection with the transaction. Roseman acknowledges that he did sign the purchase agreement, but only in his capacity to act on behalf of the Target Entities.[11]

The Buyers respond that Roseman is a party to the purchase agreement because he's identified in the agreement's preamble as "Seller Management," who is one of the six parties that the agreement was "entered into by and among . . . ."[12] Roseman, as Seller Management, incurred obligations in connection with the transaction, including making the representations and warranties in Article IV of the agreement.[13] And Roseman obtained nearly half a million dollars in the transaction that must be clawed back if the agreement is rescinded.

As the parties' briefs demonstrate, whether Roseman is a party to this transaction raises factual questions. Because it is not appropriate to resolve factual disputes at the dismissal-motion stage of a case, I deny Roseman's motion on this ground. However, I dismiss the Buyers' declaratory relief claim against Roseman because it is duplicative of their fraud claim,

---

[10] ECF No. 21-1 at 7 (preamble to the Second Amended and Restated Asset and Securities Purchase Agreement states that it "is entered into by and among . . . (3) Adam Roseman (the 'Seller Management')").

[11] ECF No. 20 at 10 (Roseman explains that he signed the purchase agreement as the director of RAAD Productions, LLC; a representative of China SNS Group Limited; and as a legal representative of Fanstang); *accord* ECF No. 21-1 at 63.

[12] *See* ECF No. 21-1 at 7.

[13] *See id.* at 23–34.

Roseman is not mentioned in that claim, and even if he's a party to the transaction, he isn't a party to the controversy that claim seeks to redress.[14]

**B.      Whether the fraud claim is precluded by the agreement's terms is a mixed bag.**

Roseman next argues that the fraud claim is precluded by the purchase agreement. The elements of common law fraud in Delaware are (1) "a false representation, usually one of fact, made by the defendant;" (2) "the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;" (3) "an intent to induce the plaintiff to act or refrain from acting;" (4) "the plaintiff's action or inaction taken in justifiable reliance upon the representation; and" (5) "damage to the plaintiff as a result of such reliance."[15] Fraud may take the form of "overt misrepresentations, but may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak."[16]

**1.      The Buyers expressly disclaimed reliance on extra-contractual statements.**

Roseman argues that the "Entire Agreement" and "Exclusion of Liability" clauses in the purchase agreement combine to preclude the Buyers from plausibly alleging that they were justified in relying on Roseman's alleged extra-contractual representations and omissions. The Delaware Chancery Court explained in *Arby Partners V, L.P. v. F & W Acquisition LLC* that Delaware courts honor only those integration clauses between sophisticated parties that "contain 'language that . . . can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in

---

[14] *See* ECF No. 1 at ¶ 85 (the Buyers insist there is a live controversy because the JOLs have demanded that the Buyers fulfill their obligation under the purchase agreement to issue and deliver stock warrants *to the JOLs*).

[15] *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

[16] *Id.* (quotation omitted).

4

deciding to sign the contract.'"[17] Here, the "Entire Agreement" clause states that, except as stated in § 6.09, "this Agreement (including any schedules and exhibits hereto), constitutes the entire agreement, and supersedes all other prior agreements, understandings, representations and warranties, both written and oral, among the parties, with respect to the subject matter hereof, including without limitation the Original Agreement and the Prior Agreement."[18] More to the point, the "Exclusion of Liability" clause states that the Buyers

> irrevocably agreed and acknowledged that . . . (b) they do not enter into this Agreement on the basis of and do not rely, and has not relied, upon any statement, representation or warranty . . . whether oral or written . . . made or given by the Seller or the [JOLs] or by any of their employees, advisers or agents, or by any other person (whether a party to this Agreement or not) except those expressly set forth or referred to in this Agreement . . . .[19]

The Buyers argue that the purchase agreement nonetheless preserves fraud claims based on extra-contractual representations because it sets forth an indemnification process[20] that is the exclusive remedy for all claims "except in the event of fraud, willful misconduct, or intentional or grossly negligent misrepresentation."[21] The Buyers theorize that, because fraud claims of all stripes are excluded from the indemnification and exclusive-remedy clauses, they are also carved out of the exclusion-of-liability and entire-agreement clauses.

After reviewing the relevant clauses, I conclude that the language is reasonably susceptible to only one meaning: the one advanced by Roseman that the Buyers promised in

---

[17] *Arby Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059 (Del. Ch. 2006) (quoting *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004)).

[18] ECF No. 21-1 at 58, § 10.08.

[19] *Id.* at 59, § 10.15.

[20] *Id.* at 48–52, Art. VIII.

[21] *Id.* at 52, § 8.03 (the "Exclusive Remedy" clause).

5

clear and unambiguous language that they were not relying on any promise or representation not contained within the agreement. Thus, I grant Roseman's dismissal motion on this ground.

### 2. The fraud claim based on Roseman's alleged intra-contractual statements survive dismissal.

Roseman argues that the fraud claim based on his allegedly false intra-contractual statements are barred under the purchase agreement's "Survival" clause, which states that "[a]ll representations and warranties contained in this Agreement shall survive the Closing for a period of fifteen (15) months after the Closing; provided that the Fundamental Representations shall survive in perpetuity and Section 4.12 shall survive until the expiration of the applicable statute(s) of limitations."[22] The Buyers, Roseman contends, allege that he made three false statements in the agreement: § 4.05 (accuracy of financial statements), § 4.06 (absence of certain changes), and § 4.12 (taxes and tax returns).[23] The Buyers add one more in their response—§ 4.10 (all material contracts were in full force and effect).[24] Because they are not "Fundamental Representations,"[25] Roseman argues that the fraud claim based on all but the statements contained in § 4.12 is time barred.

The Buyers respond that, reading all the indemnification provisions in harmony, including the survival clause, favors an interpretation that fraud claims, which are expressly carved out of the indemnification process,[26] are subject to statutory, rather than contractual,

---

[22] *Id.* at 48, § 8.01.

[23] ECF No. 20 at 17–18.

[24] *See* ECF No. 30 at 19.

[25] ECF No. 21-1 at 11, Art. I, § 35 (defining "Fundamental Representations" as including those representations of the Seller or Seller Management set forth in Sections 4.01, 4.02, 4.03, 4.04, 4.09(iii) and 4.12").

[26] *See id.* at 49, § 8.02(c); 52, § 8.03.

limitations periods. The Buyers also point out—in footnote—that they provided notice of their claims within the Survival clause's 15-month period.[27] I conclude after reviewing these clauses that the language is susceptible to the meaning proffered by either party. Because ambiguities in contract interpretation must be resolved in the Buyers' favor at this dismissal stage of the proceedings, I deny Roseman's motion on this ground.

**C.     The fraud claim against Roseman lacks the required particularity.**

Finally, Roseman argues that the Buyers' fraud claim must be dismissed because it lacks the particularity required by FRCP 9(b). "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim."[28] "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."[29] "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."[30] The plaintiff must set forth not only "the neutral facts necessary to identify the transaction" but also "what is false or misleading about a statement, and why it is false."[31] "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice."[32]

---

[27] ECF No. 30 at 22, n.7.
[28] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).
[29] *Id.* at 1106 (quotation omitted).
[30] *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).
[31] *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994).
[32] *Id.* at 1108.

The fraud claim itself contains only a recitation of its elements and conclusions that those elements have been met.[33] However, the Buyers allege earlier in their complaint the who, what, where, and when of the relevant intra-contractual statements, and they conclude that those representations were false, but the Buyers don't plead facts to plausibly show why they were false.[34] They also conclude—but do not allege facts to plausibly show—that Roseman intentionally hid and concealed from the Buyers facts material to his alleged intra-contractual statements.[35] For these deficiencies, the Buyers' fraud claim against Roseman is not pled with the required particularity. I therefore grant Roseman's dismissal motion on this ground.

The Buyers request leave to amend their complaint if it is deficient. I am not persuaded that the Buyers cannot state a colorable claim for fraud against Roseman for his allegedly false intra-contractual statements. Nor am I persuaded that the Buyers cannot plausibly state a declaratory-relief claim against Roseman. I therefore dismiss the Buyers' claims against Roseman without prejudice and with leave to amend all claims, except for their fraud claim that is based on Roseman's allegedly false extra-contractual statements and omissions, which is dismissed with prejudice and without leave to amend.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Roseman's motion for reconsideration **[ECF No. 60]** and Roseman's motion to dismiss **[ECF No. 20] are GRANTED**. The Buyers' claims against Roseman are dismissed without prejudice and with leave to amend to cure the deficiencies identified in this order, except for the Buyers' fraud claim based on Roseman's

---

[33] *See* ECF No. 1 at ¶¶ 69–81.
[34] *See id.* at ¶¶ 29–35, 37–38.
[35] *See id.* at ¶ 44.

allegedly false extra-contractual statements and omissions, which is dismissed with prejudice. The Buyers have until April 9, 2019, to file their amended complaint.

Dated: March 26, 2019

_____
U.S. District Judge Jennifer A. Dorsey