UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REMARK HOLDINGS, INC., et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>CHINA BRANDING GROUP LIMITED, et al.,<br><br>　　　　　　Defendants. | Case No. 2:18-cv-00322-JAD-CWH<br><br>**REPORT AND RECOMMENDATION** |

　　　　Before the court is Plaintiff Remark Holdings, Inc. and KanKan Limited's ("Plaintiffs") Motion to Enforce the Stipulation for Settlement (ECF No. 63), filed March 12, 2019, China Branding Group Limited's ("CBG") opposition (ECF No. 67), filed April 1, 2019, and Plaintiffs' reply (ECF No. 76), filed April 15, 2019.

**I.　　BACKGROUND**

　　　　CBG, a Cayman Islands company, was placed into official liquidation by the Grand Court of the Cayman Islands on August 18, 2016.  (Complaint (ECF No. 1) at 6, ¶¶ 23, 24.)  The Court appointed Joint Official Liquidators (the "JOLs") to attend to the liquidation of CBG's assets, payment of creditors and the winding up of CBG.  (*Id*.)  On September 20, 2016, Remark purchased CBG's business, assets and operating subsidiaries (the "Cayman Defendants") out of the liquidation.  (*Id.* at 6, ¶¶ 25-26.)  The sale was documented by a written Second Amended and Restated Asset and Securities Purchase Agreement among Defendants (the "Purchase Agreement").  (*Id.* ¶ 22.)  Pursuant to the Purchase Agreement, Plaintiffs agreed to pay for the Target Entities partly in cash and partly with a warrant that granted CBG the right to purchase up to 5,750,000 shares of Remark stock at a future date of CBG's choosing.  (*Id.*)  After the

1  agreement closed, Plaintiff discovered that the entities were nearly worthless, and brought the
2  present lawsuit.
3      In an attempt to resolve this litigation, the parties participated in a private mediation
4  on January 14 and 15, 2019, and after extensive negotiations, ultimately reached terms of a
5  settlement. (*See* Order (ECF No. 59).) The parties, with the assistance of the mediator, then
6  negotiated and agreed upon the terms of a six-page written Stipulation for Settlement dated
7  January 15, 2019 (the "Settlement Stipulation"). (Stipulation for Settlement (ECF No. 64-1).)
8      In exchange for mutual general releases of all claims arising out of or referred to in the
9  pleadings, Remark agreed to issue 5,710,000 fully transferrable warrants on a non-diluted
10 basis to purchase Remark's common stock at a warrant exercise price of $6.00/share,
11 which are exercisable for a period of five years from the date of the Settlement Stipulation,
12 and which Remark has the right to cause the warrant holders to exercise if the closing price of
13 Remark's common stock is $8.00 or greater on any five non-consecutive days in any
14 consecutive thirty-day trading window. (*Id.* at 2, ¶ 1(a).) Remark also agreed to release all
15 claims upon the escrow amount of $375,000 that was provided in the Purchase Agreement, thus
16 entitling the Defendants to access and use this cash. (*Id.* at 3, ¶ 1(b).) The parties to the
17 Settlement Stipulation also agreed to negotiate an anti-dilution provision for the warrants, and to
18 execute a long-form Definitive Settlement Agreement ("DSA") with customary settlement
19 provisions. (*Id.* at 4, ¶¶ 6-7.)
20     Counsel for CBG drafted a proposed DSA which contained an exchange right provision,
21 which affords the Cayman Defendants the right to elect to exchange the warrants received under
22 the parties' settlement for shares of Remark common stock if the closing price of Remark's share
23 value does not equal or exceed $10.70 per share for 15 trading days (over a period of 30
24 consecutive days) over the ensuing four years. (Decl. of Alison Davidson (ECF No. 64) at 2-3.)
25 Remark objects to this term, which is estimated to be of a value of $1-2 million, and the parties
26 are unable to resolve the dispute. (*Id.*)
27     Remark moves to enforce the Settlement Stipulation, arguing that the parties did not
28 agree, or even discuss, the additional terms which CBG is attempting to write into the agreement.

(Mot. to Enforce (ECF No. 63).)  In the alternative, Remark asks the court to declare the Stipulation and mutual general release to be a valid and binding agreement. (*Id.*)  CBG argues that Remark is contractually obligated to issue shares to CBG under the terms of the existing warrant, which was attached as an exhibit to the original Purchase Agreement.  (Resp. (ECF No. 67).)  It argues that the existing warrant contains numerous material terms as well as an exchange right, and those terms are impliedly part of the settlement agreement because the parties did not discuss the modification of the exchange right in the existing warrant.  (*Id.*) Because there was no meeting of the minds, CBG argues that the Settlement Stipulation should not be enforced, and the parties should continue negotiations.  (*Id.*)

## II. ANALYSIS

"An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  Thus, an enforceable settlement contract requires "an offer and acceptance, meeting of the minds, and consideration." *May,* 119 P.3d at 1257.  A contract is formed when the parties have agreed to the material terms of the agreement, even if the contract's exact language is not final. *May*, 119 P.3d at 1257.  "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012).  "Which terms are essential [i.e., material] 'depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute [that] arises and the remedy sought.'" *Id*.  Omission of a "necessary term . . . would render the contract a nullity." *Facebook, Inc. v. Pac. Nw. Software, Inc*., 640 F.3d 1034, 1037 (9th Cir. 2011).  An agreement is unenforceable "on the basis of mutual mistake when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain." *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 517 (Nev. 2015) (quotation marks omitted).

### A. The terms of the Stipulated Settlement

Here, the parties agreed that the Stipulation "contains all material terms[,] . . . is binding[,] . . . and enforceable," and agreed that only "provisions as are customary in [settlement]

agreements . . . ." needed to be further memorialized. (Stipulation for Settlement (ECF No. 64-1) at 4.) The Stipulation does not include an exchange right or include any provision incorporating or amending the terms of the existing warrant. The Stipulation indicates that it contains all material terms of the settlement agreed to by the parties, and CBG does not contend that the exchange term is not a material term. CBG does not dispute that the additional right adds significant value to the agreement. Its inclusion would materially alter the Stipulation, and it is therefore a material term of the agreement. The disputed right is not a "necessary term" of the agreement – the agreement is valid without it. The Stipulation leaves for further negotiation "reasonable and standard anti-dilution provisions, applicable to any stock split, stock dividend or similar event . . . ." CBG makes no argument that the anti-dilution provisions are tied to the exchange terms. No other term is mentioned as being subject to further negotiation. CBG's unstated assumptions cannot form the basis for a mutual mistake. *Land Baron Inv.*, 356 P.3d at 517. *See also Tipton v. Warshavsky*, 32 F. App'x 293, 294 (9th Cir. 2002) (unpublished) (disregarding argument that there was no meeting of the minds on account of one party's belief about agreement). CBG is therefore estopped from taking a contrary position in an attempt to supplement the terms of the agreement. *Smith v. Homes*, 2014 WL 4851503, at *2 (D. Nev. Sept. 26, 2014). The court finds that the Stipulation for Settlement contains the material terms of the agreement reached at the mediation, which does not include the exchange right.

### B. Grand Court approval

CBG also argues that the Stipulation for Settlement should not be enforced because express conditions precedent have not occurred. Specifically, the Stipulation states that it shall be non-enforceable absent the completion of two conditions precedent: execution of a written DSA, and approval of same by both Remark's Board of Directors and the Grand Court of the Cayman Islands. Because neither of these conditions have occurred, CBG argues there is no complete agreement to enforce. Remark responds that the failure of the approval of the Settlement Agreement does not preclude the formation of a binding contract.

Paragraph 6 of the Stipulation states that the Parties:

> [s]hall execute a Definitive Settlement Agreement. The Definitive Settlement Agreement shall be subject to sanction of the Grand Court of the Cayman Islands, and approval by Remark's Board. Such approvals are an express condition precedent to this Agreement, absent which this Agreement shall be non-enforceable.

(Stipulation for Settlement (ECF No. 64-1) at 4.)

The Stipulation for Settlement contains the material terms of the agreement between the parties, and the DSA must therefore be drafted to reflect those material terms, along with the customary settlement provisions, as agreed by the parties. Both parties have the obligation, under the terms of their agreement, to finalize and present the DSA to their principals – Remark's board of directors and the Cayman Island Grand Court. Remark's board of directors has approved the Stipulation for Settlement and a DSA which does not include the exchange right.

The Stipulation for Settlement clearly indicates that the resulting DSA is subject to sanction by the Grand Court, and that the agreement is non-enforceable without such approval. Paragraphs 1b and 7 of the Stipulation for Settlement similarly make its terms subject to approval by the Grand Court. (*See* Stipulation for Settlement (ECF No. 64-1) at 3, 4.) This makes sense – the JOLs participated in the mediation not because they are independent parties to the controversy, but because they were appointed by the Grand Court to attend to the liquidation of CBG's assets, and to oversee the payment of creditors and the winding up of CBG. It is clear that the JOLs' negotiations are subject to Grand Court approval, which is presiding over CBG's liquidation. Accordingly, the court grants Remarks motion to the extent that it orders that the DSA (without the contested exchange right) be presented to the Grand Court for its approval. Absent approval, the matter may return to continued negotiations, or to litigation.

## III. CONCLUSION AND RECOMMENDATION

IT IS THEREFORE RECOMMENDED that Plaintiff's Motion to Enforce the Stipulation for Settlement (ECF No. 63) be GRANTED in part and DENIED in part consistent with this report and recommendation.

## IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 2, 2019

_____
C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE